## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:11-CV-00077-JHM**

**SAMUEL S. FRANCIS**                                                                                  **PLAINTIFF**

**V.**

**ARMSTRONG COAL RESERVES, INC., et. al.**                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Armstrong Coal Reserves, Inc.; Armstrong Resources Holdings, LLC; Armstrong Coal Company, Inc.; Armstrong Mining, Inc.; Armstrong Resources, LLC; Armstrong Energy Holdings, Inc.; Armstrong Energy, Inc.; Western Land Company, LLC; Western Diamond, LLC; and Ceralvo Holdings, LLC's (collectively "Defendants") Motion to Dismiss [DN 33] and Motion for Leave to Submit Supplemental Authority [DN 49]. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

This action stems from a settlement agreement entered into between Plaintiff Samuel S. Francis and the Defendants on July 25, 2008. (Compl. ¶ 18.) That settlement agreement was entered into as a result of litigation filed by Plaintiff Francis, in Muhlenberg Circuit Court against the Defendants for what he believed was a violation of a royalty agreement. (Id. at ¶ 16.) As part of the settlement agreement, the parties to the circuit court suit agreed to a non-disparagement and non-interference provision. (See Defs.' Mot. to Dismiss, Ex. A July 25, 2008, Settlement Agreement ¶ 13.) This provision states in pertinent part that

> [t]he Parties agree that they shall not, in any communications with the press or other media, or any customer, client or supper of the Parties, or any of the Parties' affiliates, criticize, ridicule or make any statement which disparages or is derogatory of the other or any of their respective directors, officers or employees, whether

> orally, electronically or in writing. The Parties further agree that they shall not, directly or indirectly, take or cause to be taken any action(s) which may interfere with the business operations of the Parties or the exercise of their rights hereunder[.]"

(Id.)

Plaintiff alleges that "[a]mong the delineated business operations of the [Plaintiff] with which the [Defendants] agreed not to interfere were specific proposed transactions for [Plaintiff] or his designees to acquire Peabody Energy Company's owned and leased #8 and #9 seam coal in Muhlenberg and Ohio County." (Compl. ¶ 18.) However, following the settlement and dismissal of the circuit court suit, Defendants negotiated with Peabody Energy Company for certain rights regarding the # 8 and #9 seam coal. (Id.) Plaintiff alleges that "[d]espite the undertakings and commitments [Defendants] made in the 2008 settlement, and expressly in violation of those undertaking and commitments," Defendants have disparaged Plaintiff with Peabody Energy and interfered with Plaintiff's negotiations for the #8 and #9 seam coal. (Id. at ¶¶ 20-21.)

In an effort "to vindicate his rights under the 2008 Settlement[,]" Plaintiff has brought the current action. (Compl. ¶ 23.) The Complaint requests both compensatory and punitive damages for two causes of action, the first a breach of contract for violation of the non-interference provision, and the second a tortious interference with prospective contract claim. (See generally Compl.) Defendants have now moved to dismiss the tortious interference with prospective contract claim as well as the request for punitive damages. (See Defs.' Mot. to Dismiss.) After briefing was completed on Defendants' motion to dismiss, the Defendants filed a motion for leave to submit supplemental authority, attaching the recent memorandum, opinion and order of this Court issued in Lewis v. Ceralvo Holdings, LLC, 2012 WL 32607 (W.D. Ky. Jan. 6, 2012).

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 1949, 1950. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does

3

not require conversion of the motion to one for summary judgment." Id. (quotation omitted).

### III. DISCUSSION

Defendants have moved to dismiss Plaintiff's tortious interference with prospective contract claim on three grounds, claiming that: (1) it is barred by the economic loss rule; (2) it is merely the improper recasting of Plaintiff's original breach of contract claim in an effort to include a demand for punitive damages; and (3) it fails to sufficiently allege that the Defendants' actions were improper. In support of the second argument, Defendants have requested leave to submit additional authority, and have attached this Court's recent memorandum, opinion and order issued in Lewis v. Ceralvo Holdings, LLC, 2012 WL 32607 (W.D. Ky. Jan. 6, 2012). In Lewis, this Court engaged in an analysis of both the economic loss rule as well as the ability of a plaintiff to plead a breach of contract claim and a tort claim premised on the same set of facts, known as the independent duty test. See Lewis, 2012 WL 32607, at *2-3, *5. As the Lewis opinion will be helpful in the determination of the current matter, the Court **GRANTS** the Defendants' motion for leave to submit this additional authority.

**A. Economic Loss Rule**

Defendants contend that Plaintiff's tortious interference claim is barred by the economic loss rule. While Defendants admit that "application of the economic loss rule by Kentucky's state courts has to date been limited to product liability actions," they contend that Justice Keller's concurring opinion in Presnell Construction Managers Inc. v. EH Construction, LLC, 134 S.W.3d 575, 583-84 (Ky. 2004) envisioned the rule applying in a much broader array of circumstances. (See Def.'s Mem. in Support of Mot. To Dismiss 10.) To that end, Defendants request that this Court expand the rule under the current circumstances. (Id. at 9-10.)

As discussed above, this Court recently undertook an examination of Kentucky law addressing the economic loss rule in Lewis, as it related to a mineral lease. See Lewis, 2012 WL 32607, at *2-3. The Court analyzed the economic loss rule's application in Kentucky and found that "Kentucky courts have given no indication that they would extend the economic loss rule to mineral lease contracts." Id. at *3. "Generally speaking, the rule 'prohibits purchasers of products from recovering purely economic damages under most tort theories.'" Grace v. Armstrong Coal Co., Inc., 2009 WL 366239, at *4 (W.D. Ky. Feb. 13, 2009) (quoting HDM Flugservice GmbH v. Parker Hannifin Corp., 332 F.3d 1025, 1028 (6th Cir. 2003)). As Judge Heyburn has explained, "[v]irtually every classic description of the economic loss rule pertains to and often limits its application to the sale of products [in order to] . . . preserve the distinction between the remedies available under the U.C.C. and those available in tort." Louisville Gas and Elec. Co. v. Cont'l Field Sys., Inc., 420 F. Supp. 2d 764, 769 (W.D. Ky. 2005).

In its recent opinion adopting the economic loss rule, the Kentucky Supreme Court found that the rule "recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code." Giddings & Lewis, Inc. v. Indus. Risk Ins., 348 S.W.3d 729, 738 (Ky. 2011). However, the Kentucky Supreme Court limited its holding to "claims arising from a defective product sold in a commercial transaction." Id. at 733. Furthermore, "federal courts charged with the task of applying Kentucky law have predicted that Kentucky courts would limit the application of the economic loss rule to products liability cases, business purchases cases, and construction cases." Brewer Mach. & Conveyor Mfg. Co. v. Old National Bank, 248 F.R.D. 478, 481-82 (W.D. Ky. 2008) (collecting cases). Given the Kentucky Supreme Court's

recent analysis in Giddings, and the state of the law in Kentucky, the Court finds that it is unlikely that Kentucky Courts would apply the economic loss rule under the current circumstances. Therefore, the Court finds that the economic loss rule does not apply to the settlement agreement at issue in this case.

**B. Certification to the Kentucky Supreme Court**

In anticipation of the Court's rejection of the applicability of the economic loss rule, Defendants have requested that the Court certify this legal issue to the Kentucky Supreme Court. The United States Supreme Court has found that "[t]hrough certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save 'time, energy, and resources and hel[p] build a cooperative judicial federalism.'" Arizonans for Official English v. Ariz., 520 U.S. 43, 77 (1997) (quoting Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974)). The Sixth Circuit Court of Appeals discussed certification of issues to the Kentucky Supreme Court in Warf v. Bd. of Elections of Green Cnty., Ky., 619 F.3d 553 (6th Cir. 2010). The Warf Court found that

> "[t]he decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 449-50 (6th Cir. 2009) (quoting Transam. Ins. Co. v. Duro Bag Mfg. Co., 50 F.3d 370, 372 (6th Cir. 1995)) (internal quotation marks omitted). "Certification is most appropriate when the question is new and state law is unsettled," but the "federal courts generally will not trouble our sister state courts every time an arguably unsettled question comes across our desks." Id. (citations and internal quotation marks omitted).

Warf, 619 F.3d at 558.

The Court finds that certification of this issue is not appropriate at this time. There is ample persuasive case law addressing this issue for the Court to make a sound prediction of the Kentucky Supreme Court's likely position. Therefore, the Court finds it unnecessary to certify this issue to

the Kentucky Supreme Court.

**C. Independent Legal Duty**

Defendants next argue that under the independent legal duty test outlined in <u>Mims v. Western–Southern Agency, Inc.</u>, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007) and applied in <u>Lewis</u>, the Plaintiff's tortious interference with business expectancy claim must be dismissed. Plaintiff contends that the tort claim should not be dismissed because Defendants were under an independent legal duty not to tortiously interfere with the Plaintiff's business expectancy, which existed regardless of the terms of the settlement agreement.

In <u>Mims</u>, the Kentucky Court of Appeals adopted the position of the District Court of the District of Columbia and found that

> The failure to perform a contractual obligation typically does not give rise to a cause of action in tort. . . .  However, if a plaintiff can establish the existence of an independent legal duty, he may maintain an action in tort even though the acts complained of also constitute a breach of contract.

<u>Mims</u>, 226 S.W.3d at 836 (quoting <u>Jones v. Hartford Life and Accident Ins. Co.</u>, 443 F. Supp. 2d 3, 5 (D.D.C. 2006)). The independent legal duty test has been applied in Kentucky to a claim of negligence, <u>see</u> <u>Mims</u>, 225 S.W.3d at 836, claims of conversion, <u>see</u> <u>First Const., LLC v. Gravelroad Entm't, LLC</u>, 2008 WL 2038878, at *5 (E.D. Ky. May 12, 2008); <u>Francis v. Nami Res. Co., LLC</u>, 2008 WL 852047, at *13–14 (E.D. Ky. Mar. 28, 2008), and a claim of trespass, <u>see</u> <u>Lewis</u>, 2012 WL 32607, at *5 (W.D. Ky. Jan. 6, 2012). The Court sees no reason why it should not also be applied to claims of tortious interference with a prospective business expectancy.

In <u>Lewis</u>, this Court dismissed the plaintiffs' trespass claim based upon the independent legal duty test articulated in <u>Mims</u>. <u>Lewis</u>, 2012 WL 32607 at *5. This was because establishing that the defendants were trespassing required the plaintiffs to prove that the defendants were on the

property without right. Since there was a contract in place that permitted the defendants to be present on the property, the question was not whether they were trespassers, but whether they exceeded the scope of the right extended by the mineral lease. The trespass claim was intertwined with and necessarily dependant upon the breach of contract claim. Therefore, the plaintiffs' trespass claim was not based upon a legal duty that was independent of the breach of contract claim.

In the instant case, the duty on the Defendants' not to interfere is not dependent on the terms of the contract. Regardless of the terms of the settlement agreement, the Defendants owe a general duty to the public at large, not just the Plaintiff, to refrain from tortiously interfering with a prospective business relationship. While the Defendants may have owed a specific duty to the Plaintiff to not disparage or interfere, which was enumerated by the terms of the settlement agreement, the Defendants' general duty owed to the public still simultaneously existed. Therefore, the Court finds that the Plaintiff's tortious interference claim is based on an independent legal duty, and that Plaintiff may bring both a breach of contract claim and a tortious interference claim. See Consolidated Rail, 2009 WL 3460334, at *10 (permitting both a breach of contract claim and tortious interference claim to proceed even though the same conduct allegedly breached both duties).

## D. Sufficient Factual Allegations

Defendants final argument is that the Plaintiff's tortious interference claim must be dismissed because it fails to contain sufficient factual allegations to support the necessary elements. Kentucky has adopted the Restatement (Second) of Torts § 766B regarding tortious interference with a prospective contract. See Nat'l Collegiate Athletic Ass'n v. Hornung, 754 S.W.2d 855, 857 (Ky. 1988). Under § 766B

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for

>   the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>   >   (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>   >   (b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B (1979).

In Hornung, the Kentucky Supreme Court found that Kentucky "law is clear that a party may not recover under the theory presented in the absence of proof that the opposing party 'improperly' interfered with his prospective relation." Hornung, 754 S.W.2d at 858. "In order to be actionable, the interference must be wholly improper and lacking in any justification; *i.e.*, the plaintiff must show malice or some flagrantly wrongful conduct on the part of the defendant." Hilgers v. Int'l Gynecologic Cancer Soc., Inc., 2006 WL 3751411, at *4 (Ky. Ct. App. Dec. 22, 2006). In this context, "'[w]hat is meant is not malice in the sense of ill will but merely intentional interference without justification.'" Eastern Ky. Res. v. Arnett, 892 S.W.2d 617, 619 (Ky. Ct. App. 1995) (quoting Restatement (Second) of Torts § 766, cmt. s (1979)).

In order to determine what is "improper" the Kentucky Supreme Court has also adopted the Restatement (Second) of Torts § 767, which outlines seven factors to be considered. Hornung, 754 S.W.2d at 858. Those factors are:

>   (a) the nature of the actor's conduct,
>   (b) the actor's motive,
>   © the interests of the other with which the actor's conduct interferes,
>   (d) the interests sought to be advanced by the actor,
>   (e) the social interests in protecting the freedom of action of the actor and the contractual interests of others
>   (f) the proximity or remoteness of the actor's conduct to the interference and
>   (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979).

9

Defendants contend that Plaintiff has failed to allege sufficient facts to demonstrate that any alleged interference was improper. Plaintiff responds by arguing that he "has alleged facts that demonstrate . . . that Defendants were . . . intentionally and improperly interfering with Plaintiff's business expectancy by, *inter alia*, disparaging Plaintiff and breaching the Settlement Agreement." (Pl.'s Resp. to Defs.' Mot. to Dismiss 9.) Plaintiff further states that "[i]n alleging that Defendants disparaged him with regard to an opportunity critical to his business, that they acted with intent, and that they utilized improper means, including breach of the Settlement Agreement, Plaintiff has more than adequately stated a claim for tortious interference under Kentucky law." (Id. at 12.) In support of this argument, Plaintiff directs the Court to Ventas, Inc. v. HCP, Inc., 647 F.3d 291 (6th Cir. 2011) (interpreting Kentucky law). Defendants do not disagree that a breach of the settlement agreement is relevant to the determination of the improper interference element, rather they also cite Ventas and argue that by itself, an allegation of a breach of contract is insufficient to carry the Plaintiff's pleading burden. (See Defs.' Reply 11 ("Thus, the Ventas decision makes clear that, without more than an allegation of breach of the Settlement Agreement, Plaintiff's claim for improper interference cannot stand.").)

The precise issue in Ventas was whether it was error to instruct the jury that it could consider the breach of a confidentiality agreement as evidence of improper interference. See Ventas, 647 F.3d at 305. While Ventas did not explicitly hold that a breach of contract, without more, is insufficient to establish improper interference, the court cited, with approval, several cases from other jurisdictions, including Foam Supplies, Inc. v. Dow Chem. Co., 2008 WL 3159598 (E.D. Mo. Aug. 4, 2008) which specifically found that "a deliberate breach of contract, even where employed to secure economic advantage, is not, by itself, an 'improper means,'" Id. at *7 (internal citation

10

omitted). See Ventas, 647 F.3d 311 (collecting cases). Another of the cases cited in Ventas is Kapunakea Partners v.Equilon Enter. LLC, 679 F. Supp. 2d 1203 (D. Haw. 2009). See Ventas, 647 F.3d at 311. In Kapunakea, the district court found that a breach of contract alone was not enough to demonstrate improper interference under Hawaii law. Kapunakea, 679 F. Supp. 2d at 1218-19. This was based in part on the fact that Hawaii only allows recovery of punitive damages for a breach of contract when the conduct violates an independent legal duty that transcends the breach of contract itself. Id. The court reasoned that if a breach of contract, by itself, could satisfy the improper interference prong of a tortious interference claim then a plaintiff would be able to effectively side-step the limitation on punitive damages established under Hawaii law. Id. at 1219.

Since the Kentucky Supreme Court has not addressed whether a breach of contract alone is sufficient to demonstrate improper interference, this Court must predict how the Kentucky Supreme Court would resolve this issue. Stanek v. Greco, 323 F.3d 476, 478 (6th Cir. 2003). While the Court recognizes that the decisions in Foam Supplies and Kapunakea are not based on Kentucky law and are not binding authority, the Court nevertheless finds them to be persuasive, as did the Sixth Circuit. See Ventas, 647 F.3d at 311 (citing Foam Supplies and Kapunakea with approval). Like Hawaii, Kentucky does not permit the recovery of punitive damages for a breach of contract. See K.R.S. § 411.184(4). In a situation such as this, if Plaintiff were permitted to demonstrate improper interference by a breach alone, it would effectively grant him access to punitive damages for a breach of contract. This would contravene the intent of the Kentucky legislature in enacting K.R.S. § 411.184(4). Furthermore, in keeping with the independent legal duty test articulated in Mims, a plaintiff may maintain a tort only if there is a duty that is independent of that articulated by the breach of contract. Allowing the breach to satisfy this crucial element of the tortious interference

11

claim would eliminate the distinction identified and required by the Kentucky Court of Appeals in Mims. See Mims, 225 S.W.3d at 836. Accordingly, the Court predicts that the Supreme Court of Kentucky would find that a breach of contract, without more, is insufficient to satisfy the improper interference element of a tortious interference with prospective contract claim under Kentucky law.

Therefore, although Plaintiff has successfully alleged that the Defendants' conduct in breaching the settlement agreement is evidence of the Defendants' improper interference, such an allegation alone is insufficient to plead the element of improper interference. It is necessary then to examine the remaining allegations identified by Plaintiff to determine if Plaintiff has plead sufficient facts which demonstrate that he is entitled to relief. Plaintiff proffers the following factual allegations found in his Complaint in an effort to demonstrate that he has met his pleading burden: (1) the Peabody Transaction was critical to his business operations (Compl. ¶ 19); (2) the Defendants knew as much (Id. at ¶¶ 18, 35); (3) upon information and belief, Defendants intentionally and through malicious, dishonest, fraudulent, unfair and improper means, interfered with the Peabody Transaction (Id. at ¶ 36); and (4) prior to the settlement agreement, Defendants had engaged in a pattern of wrongdoing designed to defeat the consideration they had promised Plaintiff in their previous dealings (Id. at ¶ 17). (Pl.'s Resp. 12-13.) While the first two allegations identified by Plaintiff, regarding the Defendants' knowledge of the importance of the Peabody transaction, may demonstrate that the Defendants' interference was intentional, they do not demonstrate that the interference was improper. The Court finds that they are not relevant to a determination of the impropriety of the interference.

Defendants next challenge Plaintiff's allegation that upon information and belief, the Defendants intentionally and through malicious, dishonest, fraudulent, unfair and improper means,

12

interfered with the Peabody Transaction. Defendants argue that such a statement must be disregarded because it fails to state fraud with particularity as required by Fed. R. Civ. P. 9(b). (Defs.' Mem. in Support of Mot. to Dismiss 18.) Plaintiff contends that this allegation satisfies Rule 9(b), because the allegations do not allege fraud but instead reveal the Defendants' intent. (See Pl.'s Resp. 14 (citing Fed. R. Civ. P. 9(b) for the proposition that allegations of malice, intent, knowledge, and other conditions of a person's mind may be alleged generally).) The Court finds that a discussion of Rule 9(b)'s heightened pleading standard is premature because Plaintiff's allegation that the Defendants' "interference was intentional and was carried out through malicious dishonest, fraudulent, unfair, and/or improper means[,]" does not satisfy Rule 8's notice pleading standard.

In Ashcroft v. Iqbal, the Supreme Court held that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and that allegations that are no more than legal conclusions need not be accepted as true. 129 S. Ct. 1937, 1949 (2009). It is clear that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" Bell Atlantic Corp. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Under the interpretation of Rule 8 announced in Twombly and Iqbal, the Plaintiff's attempt to plead improper interference by simply alleging "malicious, dishonest, fraudulent, unfair, and/or improper means" is insufficient, and the Court is not bound to accept such a pleading as true. Plaintiff is required to plead factual allegations, not legal conclusions, and he has failed to carry that burden. Therefore, the Court finds that this alleged factual statement does not demonstrate "improper interference."

Plaintiff's last identified factual statement is that prior to the settlement agreement, Defendants had engaged in a pattern of wrongdoing designed to defeat the consideration they had

13

promised Plaintiff in their previous dealings. Plaintiff does not discuss how this allegation is relevant to demonstrating the Defendants' improper interference with the Peabody transaction. However, even assuming that this statement is true, the Court finds that it is not enough to demonstrate that the Plaintiff is entitled to relief. A plaintiff satisfies the pleading standard of Rule 8 only when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 1949, 1950. Even considering the above factual statement in conjunction with the alleged breach of contract, the Court finds that the Plaintiff has not plead sufficient facts to "permit the court to infer more than the mere possibility of misconduct." The Court finds that the Plaintiff has not met his pleading burden, and that the factual allegations that have been asserted are not enough to allow the Court to draw the reasonable inference that the Defendants are liable for tortious interference with a prospective contract. Therefore, the Court finds that Plaintiff's tortious interference claim should be dismissed.

However, where the dismissal of a complaint is due to the failure of the plaintiff to properly plead a cause of action, the appropriate course of action is to dismiss the complaint without prejudice and allow the plaintiff the ability to cure the defects with an amended complaint. See United States ex rel. Bledsoe v. Cmty. Health Sys. Inc., 342 F.3d 634, 644 (6th Cir. 2003) ("In EEOC v. Ohio Edison Co., 7 F.3d 541, 546 (6th Cir. 1993), we held that 'where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'"). In the instant case, the Court finds that if the Plaintiff were to draft his complaint more carefully and with more specificity that he very well could

state a claim for tortious interference. Therefore, the Court will dismiss Plaintiff's tortious interference claim without prejudice.

### E. Punitive Damages

Defendants next seek to dismiss Plaintiff's claim for punitive damages. Defendants argue that punitive damages cannot be awarded for a breach of contract and are only appropriate in connection with Plaintiff's tortious interference claim. Defendants contend that because the tortious interference claim should be dismissed that the punitive damages claim should also be dismissed. Kentucky law is clear that "[i]n no case shall punitive damages be awarded for breach of contract." K.R.S. § 411.184(4).

As the Court has dismissed Plaintiff's tortious interference claim above, the punitive damages request must also be dismissed. However, since the tortious interference claim was dismissed without prejudice, so too is Plaintiff's request for punitive damages. Should an amended complaint be filed that corrects the pleading deficiencies identified above, the request for punitive damages may be reinstated.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants Armstrong Coal Reserves, Inc.; Armstrong Resources Holdings, LLC; Armstrong Coal Company, Inc.; Armstrong Mining, Inc.; Armstrong Resources, LLC; Armstrong Energy Holdings, Inc.; Armstrong Energy, Inc.; Western Land Company, LLC; Western Diamond, LLC; and Ceralvo Holdings, LLC's (collectively "Defendants") Motion to Dismiss [DN 33] and Motion for Leave to Submit Supplemental Authority [DN 49] are **GRANTED** as to Plaintiff Samuel S. Francis's tortious interference with prospective contract claim and request for punitive damages. The Plaintiff's

tortious interference claim and request for punitive damages are, therefore, dismissed without prejudice.

cc: counsel of record