UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:11-CV-00077-M

SAMUEL S. FRANCIS                                                    PLAINTIFF

V.

ARMSTRONG COAL RESERVES, INC., et al.                    DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Partial Summary Judgment [DN 59] and its Request for Oral Argument [DN 84]. Also before the Court is Plaintiff's Motion to Strike [DN 86]. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

Plaintiff has been in the business of acquiring and selling coal properties for over thirty years. In the fall of 2006, he began acquiring various mining properties located in Muhlenberg and Ohio Counties for what became known as the Armstrong Project. As investors became involved with the Armstrong Project, several companies were created. These companies included those of Defendants.

This action stems from a Settlement Agreement executed on July 25, 2008 between Plaintiff and Defendants. (Compl. ¶ 18.) The Settlement Agreement was entered into as a result of litigation filed by Plaintiff against Defendants. (Id. at ¶ 16.) As part of the Settlement Agreement, the parties executed a non-disparagement and non-interference provision. (See 2008 Settlement Agreement [DN 59-4] ¶ 13.) This provision, located in § 13 of the Settlement Agreement, provides as follows:

> NON-DISPARAGEMENT AND NON-INTERFERENCE: The Parties agree that they shall not, in any communications with the press or other media, or any customer, client or supplier of the Parties, or any of the Parties' affiliates, criticize, ridicule or make any statement which disparages or is derogatory of the other or any of their respective directors, officers or employees, whether orally, electronically or in writing. **The**

> **Parties further agree that they shall not, directly or indirectly, take or cause to be taken any action(s) which may interfere with the business operations of the Parties or the exercise of their rights hereunder**; provided, however, this shall not be construed to prohibit any claims relating to an alleged breach of, or performance of any obligations under, this Agreement or the agreements contemplated herein.

(Id. (emphasis added).) In Count I of his Complaint, Plaintiff seeks damages for Defendants' alleged breach of the non-interference provision.  Plaintiff asserts that Defendants interfered with his business operations by acquiring Peabody Energy's #8 and #9 seam coal in Muhlenberg County and preventing him from purchasing that coal.  (Compl. ¶ 18.)  Defendants counter that they did not violate the non-interference provision because they were not prohibited from acquiring the rights to mine Peabody Energy's #8 and #9 coal.  (Defs.' Mem. in Supp. of Defs.' Mot. for Partial Summ. J. [DN 59-1] 8.)

Central to the parties' arguments is the relationship between the non-interference provision in § 13 of the Settlement Agreement and the non-competition provision in § 14 of the Settlement Agreement.  Section 14 states that the Francis Parties "shall execute and deliver a Non-competition agreement . . . ."  (See 2008 Settlement Agreement [DN 59-4] ¶ 14.)  As required by this section, the parties executed a Non-Competition Agreement on July 25, 2008.  It provides as follows:

> Non-Competition. The Francis Parties hereby covenant and agree that they each will not, for a period of five (5) years from the date of this Agreement engage in any business in competition with the Armstrong Parties nor acquire, whether in fee or by lease, any mineral interests in western Kentucky; provided however, **the provisions of this Paragraph 1 shall not apply to: (a) any existing business operations in which the Francis Parties are currently engaged or committed to be engaged,** provided such existing or committed operations are not expanded or enlarged; or (b) the purchase of any coal or other minerals located underneath the [Stone Property] owned by Aaron Francis in Muhlenberg County, Kentucky, acquired by six (6) deeds dated February 15, 2008 . . . .

(See 2008 Non-Competition Agreement [DN 59-5] ¶ 1 (emphasis added).) Defendants agreed "not to acquire the coal or other minerals located underneath the southernmost 120 acres of the [Stone

2

Property]." (Id.)

In their Motion for Partial Summary Judgment, Defendants assert that they are entitled to judgment as a matter of law on Plaintiff's claim that they breached the non-interference provision because: (1) the non-interference provision is not a non-competition provision and did not prohibit Defendants from competing with Plaintiff for the rights to mine Peabody Energy's #8 and #9 coal; and (2) the parties' Non-Competition Agreement contains no such prohibition. (See Defs.' Mot. [DN 59] 1.) These assertions are analyzed below.

## II. STANDARD OF REVIEW AND LAW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the

[non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

The issues raised in Defendants' motion are governed by principles of contract interpretation. Under Kentucky law, "the construction and interpretation of a contract including questions regarding ambiguity are questions of law to be decided by the Court." Hulda Schoening Family Trust v. Powertel/Kentucky Inc., 275 F. Supp. 2d 793, 794 (W.D. Ky. 2003) (citation omitted). "In construing a contract, a court's primary objective is to ascertain and to effectuate the intention of the parties to the contract from the contract itself." Logan Fabricom, Inc. v. AOP P'ship LLP, 2006 WL 3759412, at *2 (Ky. App. Dec. 22, 2006). A court's analysis thus begins with a contract's four corners. See 3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist., 174 S.W.3d 440 (Ky. 2005) (noting that when no ambiguity in a contract exists, a court should look "only as far as the four corners of the document to determine the parties' intentions"). As a rule, a contract "must be construed as a whole, giving effect to all parts and every word in it if possible." Am. Dairy Queen Corp. v. Fortune St. Research & Writing Inc., 753 F. Supp. 2d 675, 679 (W.D. Ky. 2010).

"[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear v. P.T.A. Indus., Inc., 103 S.W.3d 99, 106 (Ky. 2003). If a contract is ambiguous, however, a court may "consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." Wolf River Oil Co. v. Equity Grp.-Ky. Div., LLC, 2010 WL 427775, at *2 (W.D. Ky. Feb. 3, 2010) (quoting Cantrell Supply, Inc. v.

Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. App. 2002)).

The fact that the parties disagree about a contract's interpretation does not mean that it is ambiguous. See B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 594 (6th Cir. 2001) (noting that "disputed issues of contractual interpretation can be resolved at summary judgment on the basis that they are questions of law"); see also Cantrell Supply, Inc., 94 S.W.3d at 385 (noting that "[t]he fact that one party may have intended different results . . . is insufficient to construe a contract at variance with its plain and unambiguous terms"). Instead, a contract is ambiguous only "if it can be reasonably interpreted to support two different positions." Albert M. Higley Co. v. N/S Corp., 445 F.3d 861, 865 (6th Cir. 2006). Once a court determines that a contract is ambiguous, "areas of dispute concerning the extrinsic evidence are factual issues" and contract construction becomes "subject to resolution by the fact-finder." Rite Aid of Ky., Inc. v. Foursome Props., LLC, 2011 WL 3516851, at *2 (Ky. App. Aug. 12, 2011).

Contracts that are executed at the same time and concern the same subject matter should be read and construed together for the purpose of ascertaining the parties' intent. See, e.g., ABCO-BRAMER, Inc. v. Markel Ins. Co., 55 S.W.3d 841 (Ky. Ct. App. 2001) (contracts must be construed as a whole and all writings that are part of the same agreement must be construed together); Veech v. Deposit Bank of Shelbyville, 278 Ky. 542 (Ct. App. 1939) (instruments that are part of the same transaction may be interpreted together in determining the parties' intent). In the present case, the parties' Settlement Agreement and Non-Competition Agreement bear the same date, concern the same subject matter, and were executed by the parties in respective sittings. Also, the Settlement Agreement refers to the Non-Competition Agreement. Therefore, they must be construed together.

### III. DISCUSSION

#### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DN 59]

The present dispute exists because Defendants acquired Peabody Energy's #8 and #9 coal in Muhlenberg County. Plaintiff asserts that this violated the parties' non-interference provision, as his "business operations" included the acquisition of such coal. For the Court to resolve the dispute, it must analyze the phrase "business operations" and the term "interfere." It must also examine the relationship between the parties' non-interference and non-competition provisions to determine the parties' intent.

#### A. "BUSINESS OPERATIONS"

If the acquisition of Peabody Energy's #8 and #9 coal was not a part of Plaintiff's "business operations," Defendants' acquisition of those mineral interests did not violate the non-interference provision and summary judgment in favor of Defendants would be appropriate. Plaintiff proposes that acquiring Peabody Energy's #8 and #9 coal was a "business operation." He also proposes that his "business operations" were limited to three specific transactions: (a) his ongoing efforts to acquire Peabody Energy's #8 and #9 coal in Muhlenberg County; (b) his ongoing efforts to acquire Peabody's #8 coal in Ohio County; and (c) his ongoing efforts to assist Jon Rogers in obtaining financing for a mining operation. (Pl.'s Resp. to Defs.' Mot. for Part. Summ. J. [DN 62] 7.) According to Plaintiff, these transactions were listed in a letter dated July 25, 2008 that was drafted by him and delivered to Defendants. (Id.)

Defendants assert that the phrase "business operations" should not be narrowly interpreted to mean the three transactions listed in Plaintiff's letter. They highlight that Plaintiff's letter dated July 25, 2008 refers to "Committed Transactions Referred to in the **Non-Competition Agreement**"

and states that Plaintiff wanted Defendants to be on notice that he was "committed to" the three

listed projects.  (Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Partial Summ. J. [DN 80] 15.)

According to Defendants, since the letter does not refer to the Settlement Agreement–and since the

Settlement Agreement does not refer to Plaintiff's "committed" operations–the phrase "business

operations" in the Settlement Agreement should not be construed as synonymous with the three

listed transactions.  (Id.)  Further, Defendants assert that they are entitled to summary judgment even

if Plaintiff's efforts to acquire Peabody Energy's #8 and #9 coal are a "business operation."  (Defs.'

Mem. [DN 59-1] 13.)

      For the reasons outlined elsewhere in this Memorandum Opinion & Order, the Court agrees

with Defendants that the phrase "business operations" in the Settlement Agreement should not be

narrowly interpreted to mean the three transactions in Plaintiff's July 25, 2008 letter.  Therefore, the

Court must interpret the meaning of the phrase.  The phrase "business operations" is not ambiguous.

To ascertain the meaning of a phrase in an unambiguous contract, Kentucky courts often look to the

definition set forth in dictionaries.  See Pizza Magia Intern., LLC v. Assurance Co. of Am., 447 F.

Supp. 2d 766, 771–72 (W.D. Ky. 2006); Davis v. Siemens Medical Solutions USA, Inc., 399 F.

Supp. 2d 785, 792 (W.D. Ky. 2005).  Webster's Dictionary defines an "operation" as a "business

transaction especially when speculative."  Merriam-Webster Online Dictionary, available at http://

www.merriam-webster.com/dictionary/operation.  Courts in other jurisdictions have interpreted the

phrase in a similar manner.  See, Stadium Chrysler Jeep, L.L.C. v. DiamlerChrysler Motors Co.,

LLC, 324 F. Supp. 2d 587, 896 (D.N.J. 2004) (noting that the natural language definition of the

phrase "business operations" is "the actual performance or process of work as it relates to a

company's business"); Frame v. City of Arlington, 657 F.3d 215, 227 (Tex. Ct. App. 2011) (noting

7

that "operations" include the "whole process of planning for and operating a business"). Therefore, the Court concludes that a company's business operations include any speculative transactions. They include all of the company's actions that relate to the planning for and operation of a business.

The Court must next determine whether the acquisition of Peabody Energy's #8 and #9 coal falls within this meaning of the phrase. The Court finds that it does. The acquisition of Peabody Energy's #8 and #9 coal was a speculative business transaction. Moreover, it concerned the parties' business of operating mining properties in western Kentucky. Efforts to expand one's influence by acquiring additional properties are part of the process of planning for a business. Thus, acquiring Peabody Energy's #8 and #9 coal was a "business operation." Nevertheless, the Court finds that under the plain terms of the parties' agreements, Plaintiff's claims fail as a matter of law.

## B. "INTERFERE"

The Settlement Agreement's plain and unambiguous terms provide that Defendants violate the non-interference provision if they "interfere" with Plaintiff's business operations. Thus, the Court must determine whether Defendants' competition with Plaintiff, and subsequent acquisition of Peabody Energy's #8 and #9 coal, constituted interference. This determination largely hinges on whether competitive behavior is prohibited by the non-interference provision.

In their motion for summary judgment, Defendants argue that the non-interference provision is not a non-competition provision and did not prohibit Defendants from competing with Plaintiff for the rights to mine Peabody Energy's #8 and #9 coal. (Defs.' Mot. [DN 59] 1.) Plaintiff counters that the non-interference provision prohibits Defendants from taking **any** actions that may impede Plaintiff's business operations and this prohibition necessarily includes a prohibition on competition. (Pl.'s Resp. [DN 62] 13.) Plaintiff emphasizes that Black's Law Dictionary (9th ed. 2009) defines

8

"interference" as the "act of meddling in another's affairs" and states that Defendants meddled in his affairs by inserting themselves into his discussions with Peabody Energy. (Id. at 14.) According to Plaintiff, since the parties had no legal obligation to address competitive behavior in just one place, the fact that they drafted a Non-Competition Agreement to address Francis' non-competition covenant does not mean that they could not also prohibit competitive behavior in the Settlement Agreement. (Id. at 16.)

The Court finds Defendants' argument more persuasive. Under Kentucky law, courts should decline to read a contract's more general provisions to address matters that are specifically addressed in other provisions of the same contract. See, e.g., Briscoe v. Preferred Health Plan, Inc., 2008 WL 4146381, at *2 (W.D. Ky. Sept. 3, 2008) (holding that payment of administrative fees was governed by a plan's specific provisions for administrative fees and not a more general provision for charges); Newton v. N. Am. Specialty Ins. Co., 2010 WL 3825459, at *3 (E.D. Ky. Sept. 24, 2010) (holding that payment for a euthanized ataxic horse was governed by a policy's specific guidelines for ataxic horses and not a general humane destruction provision).

The parties specifically addressed competition in the Non-Competition Agreement. Its express terms broadly restrict Plaintiff's competitive behavior, prohibiting him from engaging in business competition with Defendants and from acquiring mineral interests in western Kentucky with two narrow exceptions. The express terms of the Non-Competition Agreement establish a more limited restriction on Defendants, only prohibiting them from acquiring coal or minerals located under 120 acres of the Stone Property. (2008 Non-Competition Agreement [DN 59-5] ¶ 1.) On the other hand, the non-interference provision is a mutually-restrictive provision that broadly applies to both parties' business operations. The provision does not delineate specific instances in which

9

the parties can or cannot compete, nor does it even mention competition.  If it applies at all to competition, it certainly does so in a more general way than does the Non-Competition Agreement.

Black's Law Dictionary (9th ed. 2009) defines "interference" as the "act of meddling in another's affairs." It defines "competition" as the "struggle for commercial advantage" or the "effort or action of two or more commercial interests to obtain the same business from third parties."  Thus, competition is limited to one's advancement of his own affairs and interference encompasses a broader set of behaviors.  Since the parties differentiate between competition and interference, the Court concludes that it should not read the general interference provision to address competition, which is specifically addressed elsewhere. The fact that the parties specifically address competition in § 14 of the Settlement Agreement and in a distinct Non-Competition Agreement indicates their intent to address competitive behavior in provisions that are tailored to competition alone. Furthermore, the fact that the interference provisions are contained within the same paragraph as the non-disparagement provisions indicates that the parties intended interference to mean behavior more akin to meddling rather than competition.

The Court agrees with Plaintiff that both the non-interference and non-competition provisions must be given effect, as a basic principle of contract construction provides that courts must interpret contracts to give meaning to every term.  Am. Dairy Queen Corp. v. Fortune St. Research & Writing Inc., 753 F. Supp. 2d 675, 679 (W.D. Ky. 2010) (noting that contracts must be construed as a whole, giving effect to all parts and every word in it if possible).  However, in order for both provisions to be given effect, the Court must interpret the non-interference provision as imposing a distinct type of restriction.  If the non-interference provision also prohibits competition, its plain terms create a limitless, mutual restriction that goes beyond the separate, explicit restrictions

10

in the Non-Competition Agreement.  For example, Defendants would be prohibited under the non-interference provision from competing with Plaintiff as to the acquisition of Peabody Energy's #8 and #9 coal.  However, under the Non-Competition Agreement, they would only be prohibited from acquiring coal and minerals under 120 acres of the Stone Property.  Further, because the parties' non-interference obligations are mutual, it would also bar Plaintiff from competing with Defendants' "business operations."  As discussed above, the plain meaning of the phrase "business operations" includes speculative business transactions and would include the acquisition of Peabody Energy's #8 and #9 coal by Defendants.  Plaintiff's reading creates a stalemate under which neither party could attempt to acquire the coal.  This is clearly not what the parties intended.

Plaintiff attempts to avoid this result by constructing a different interpretation of the parties' agreements.  Under Plaintiff's construction, Defendants were only precluded under the non-interference provision from interfering with the three "business operations" that were carved out of the Non-Competition Agreement.  Thus, the non-interference provision did not create a limitless restriction on competition by Defendants. (Id. at 18.)  It only created a situation where Defendants could not acquire those "business operations" of Plaintiff without violating the parties' agreements.

However, there is nothing in the language of the non-interference provision to support this interpretation.  The Settlement Agreement does not restrict the phrase "business operations" to the three transactions in Plaintiff's letter and the letter does not even mention the Settlement Agreement.  Additionally, under Plaintiff's interpretation of the non-interference provision, the phrase "business operations" seems to have different meanings depending on the party to which the phrase is referring.  In other words, Plaintiff proposes that Defendants' business operations are defined as all operations **other than** the three transactions identified by Plaintiff's letter, while Plaintiff's business

operations are defined as **only** those three transactions identified by Plaintiff's letter.  But such a construction finds no support under Settlement Agreement's plain terms.  The Court thus declines to narrowly interpret the phrase "business operations" to mean the three listed transactions.

The Court notes that it would have been a simple matter for these sophisticated parties to have clearly stated that Defendants were prohibited from competing with Plaintiff for the rights to acquire Peabody Energy's #8 and #9 coal.  They could have simply included that provision in the Non-Competition Agreement.  Contracts must be construed consistent with common sense and in a manner that avoids absurd results.  See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 545 (6th Cir. 2007).  It defies common sense to believe that the parties would craft such a complex scheme where words are given different meanings in different contexts but fail to include any express indication in the Settlement Agreement that this is what they intended.

Plaintiff suggests that the parties chose to avoid including such a restriction in the Non-Competition Agreement.  According to Plaintiff, the only reason that the express prohibition as to the Stone Property was included in the Non-Competition Agreement is because it relates to a non-business asset that would not come within the language of the non-interference provision.  In other words, Plaintiff asserts that the parties prohibited Defendants from acquiring the coal under the Stone Property in the Non-Competition Agreement because it is a non-business asset that finds no protection under the non-interference provision.  In contrast, since the acquisition of Peabody Energy's #8 and #9 coal is a business operation as defined in the July 25, 2008 letter, the parties had no need to list it in the Non-Competition Agreement since Defendants would already be prohibited from competing with Plaintiff under the non-interference provision.  Again, the Court finds that it

is not reasonable to conclude that the non-interference provision was intended to be a prohibition upon Defendants' right to compete for the acquisition of Peabody Energy's #8 and #9 coal.

The plain, unambiguous language of the parties' agreements mandates the entry of summary judgment in favor of Defendants. The fact that Plaintiff may have intended different results "is insufficient to construe a contract at variance with its plain and unambiguous terms." See Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. App. 2002). Defendants' motion for partial summary judgment is **GRANTED**.

### PLAINTIFF'S MOTION TO STRIKE THE APPENDIX TO DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT [DN 86]

On July 3, 2012, Defendants filed a 15-page Reply in Support of their Motion for Partial Summary Judgment [DN 80]. With this Reply, Defendants filed a 45-page Objections to Plaintiff's Evidentiary Submissions [DN 82] and a 32-page Appendix to Defendants' Reply [DN 83]. Plaintiff has moved to strike the Appendix. In support, Plaintiff asserts that Defendants exceeded LR 7.1(d)'s 15-page limitation on reply memoranda. (Pl.'s Mot. to Strike [DN 86] 1.) Plaintiff also asserts that Defendants are improperly using their reply to materially alter the nature of their Motion for Partial Summary Judgment by arguing, for the first time, that they are entitled to summary judgment based on extrinsic evidence. (Id. at 2.) In response, Defendants argue that their Appendix is reasonable, as it relates to several evidentiary disputes in this action. Defendants also argue that their Appendix is authorized by Federal Rule of Civil Procedure 56(c), which authorizes a showing that the materials cited do not establish the absence of a genuine dispute of fact. Further, Defendants assert that they are not asking the Court to grant summary judgment based on extrinsic evidence. Instead, they have submitted extrinsic evidence to controvert Plaintiff's evidence and to establish that if the Court does not grant summary judgment in Defendants' favor, there is no basis to grant summary

judgment in Plaintiff's favor based on extrinsic evidence.

The Court finds it unnecessary to grant Plaintiff's motion in this case since it has refused to rely on extrinsic evidence in interpreting the plain language of the parties' agreements. Additionally, the Court finds that Plaintiff's argument as to Defendants' material alteration of their position fails. As Defendants assert, they are not asking the Court to grant summary judgment based on extrinsic evidence. Instead, they presented extrinsic evidence in recognition of the fact that the Court could grant summary judgment for a non-movant. Fed. R. Civ. Pro. 56(f). Plaintiff's motion is **DENIED**.

### DEFENDANTS' REQUEST FOR ORAL ARGUMENT [DN 84]

Defendants have asked that the Court entertain oral argument. The Court finds this request unnecessary due to the Settlement Agreement's clear and unambiguous language, as well as due to the fact that the parties have presented numerous pages of documentation and briefing on this matter. Since the Court believes that oral argument would be unhelpful, Defendants' request is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment [DN 59] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike [DN 86] is **DENIED**.

**FURTHER** that Defendants' Request for Oral Argument [DN 84] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

November 27, 2012

cc: counsel of record

14